IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) NO. 3:23-cr-00182 |
| v. | ) |
| | ) JUDGE RICHARDSON |
| | ) |
| CASSIDY BUSBIN | ) |

## MEMORANDUM OPINION AND ORDER

Pending before the Court[1] is Defendant's "Motion to Revoke the Detention Order" (Doc. No. 26, "Motion"), supported by a memorandum of law (Doc. No. 27, "Memorandum") and a sworn declaration of counsel (Doc. No. 28, "Declaration"). Via the Motion, brought under 18 U.S.C. § 3145(b), Defendant seeks revocation of the Magistrate Judge's order of detention (Doc. No. 16, "Detention Order"), which was based on the Magistrate Judge's finding that Defendant posed a threat to other persons and the community (though not a risk of flight). The Government has filed a response in opposition (Doc. No. 31, "Response"), to which Defendant replied (Doc. No. 34, "Reply"). For the reasons discussed below, the Motion will be denied.

BACKGROUND

On November 7, 2023, Defendant was charged in a Criminal Complaint (Doc. No. 1) with one count of cyberstalking, in violation of 18 U.S.C. § 2261A(2)(A) and (B), and a warrant was issued for his arrest (Doc. No. 2). The charge arose from an alleged pattern of conduct undertaken by Defendant—an active-duty member of the United States Army stationed at Fort Campbell Military Installation ("Fort Campbell")—to harass and intimidate judges, public officials, and

---

[1] Herein, "the Court" refers to the undersigned District Judge, as opposed to the Magistrate Judge who entered the Detention Order.

others in Clarksville (Montgomery County), Tennessee, via the Internet (Facebook and Instagram) and the U.S. mail. The Government filed a motion for detention (Doc. No. 3, "Motion for Detention") on the grounds that the case involves a "crime of violence" (as defined by 18 U.S.C. § 3156(a)(4))[2] and involves "a serious risk that [Defendant] will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate or attempt to threaten, injure or intimidate a prospective witness or juror."[3] *See* 18 U.S.C. §§ 3142(f)(1)(A) and (f)(2)(B).

Defendant was arrested on November 8, 2023, and at his initial appearance on the same date, he was temporarily detained pending a preliminary and detention hearing ("the hearing"), which was held on November 21, 2023. (Doc. No. 15). Ultimately, the Magistrate Judge found that the Government established probable cause that Defendant committed the crime of cyberstalking, (Doc. No. 36 at 66:4-6), and that Defendant's release would create a danger to the community and to the alleged victims, and "that there are no conditions or combination of conditions that will reasonably assure the safety of the community." (Doc. No. 36 at 75:4-6).[4] As to Defendant's dangerousness, the Magistrate Judge found that "[Defendant] would act upon the allegations . . . . made in this case, that he [will] cause physical harm to the [individuals] who have

---

[2] For purposes of the Bail Reform Act, a crime of violence means: "an offense that has an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another" ("elements clause") or "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense" ("residual clause"). 18 U.S.C. § 3156(a)(4)(A), (B). In its Motion for Detention, the Government asserts that cyberstalking is a crime of violence under the elements clause and the residual clause of 18 U.S.C. § 3156(a)(4).

[3] Notably, these are the *grounds* for the Government *obtaining a detention hearing*, not the *standards* for the Government *prevailing at a detention hearing or otherwise obtaining an order of detention* If the Government is granted a detention hearing on one or both of these (or indeed any other grounds), the Government does not need to prove up the predicate grounds at the detention hearing; instead, it need only satisfy the applicable standards for detention, which are not framed precisely in terms of any particular grounds for moving for a detention hearing.

[4] In so doing, the Magistrate Judge recognized that under 18 U.S.C. § 2261A(2)(A) and (B), the harm extends not only to physical harm to an individual but also to emotional distress.

been identified by the Government, and also that [Defendant will] continue to violate the statute by continuing to engage in conduct that would result in the individuals experiencing a reasonable fear of death or serious bodily injury or that would reasonably be expected to cause [the victims] substantial emotional distress. (Doc. No. 36 at 69:2-11). With respect to Defendant's proposed conditions of release, the Magistrate Judge reasoned that Defendant's brother and wife were supportive of the actions of Defendant and of views he espoused, making these family members inappropriate third-party custodians. (Doc. No. 36 at 72:5-11). Similarly, the Magistrate Judge concluded that electronic monitoring or home detention could not effectively mitigate the risk of dangerousness, in that such a condition could not assure the safety of the victims due to Defendant's location and close proximity to the victims. (Doc. No. 36 at 73:2-18). He explained that any violation would not be known until it was too late to prevent harm and ultimately concluded that there were "no conditions…offered…that would reasonably assure the safety of the community and ensure that [the victims] wouldn't continue to be victimized in such a fashion that may be potentially worse as the government suggests, or at a minimum, would constitute the same violations that currently exist as alleged in the criminal complaint in this matter." (Doc. No. 36 at 74:16-24). At the conclusion of the hearing, Defendant was ordered detained pending trial.

Less than a month after the hearing, an Indictment was filed charging Defendant with four counts of cyberstalking, in violation of 18 U.S.C. §§ 2261A(2)(A), 2261A(2)(B), and 2261(b). (Doc. No. 19). Shortly thereafter, Defendant filed the instant Motion.

    A. The Parties' Positions

        i.    The Government's Position

At the hearing, the Government introduced 11 exhibits, which consisted of pictures, social media posts, or statements (hereinafter referred to generally as "posts") allegedly made by

Defendant.[5] The posts were collected from the social media accounts of Defendant, his spouse, and his brother, and were accessible to members of the public. (Doc. No. 36 at 7:17-25). Below, the Court highlights certain evidence presented at the hearing that it deems integral to the timeline and an understanding of Defendant's alleged conduct and the analysis herein.

The first exhibit introduced at the hearing is a post from Defendant's Instagram account as Exhibit 1. (Doc. No. 36 at 9:8-9). The post, which was overlaid on a photograph of a loose pile of rifle ammunition, stated "Travis Meeks mess with my kids again amd [sic] find out who tf I am :)." (Doc. No. 36 at 9:17-10:6).[6] Testimony revealed that Travis Meeks was (or still is) the attorney who represented Defendant's ex-spouse in their divorce proceedings in Montgomery County, Tennessee. (Doc. No. 36 at 10:9-12). According to the exhibit, the post was made on May 10, 2023.

Exhibit 2 is a post made on July 26, 2023[7] on the official judicial Facebook page of state court Judge Kathryn Olita's ("Judge Olita"). The post stated:[8]

> [T]hat snake Olita is a disgrace to the court and most likely end up in prison fro all the back-door deal and rights she violates and god knows i will absolutely celebrate the day she is removed from power and put in her place for the little rat she is hundreds of children are suffering because of her financial gains and she is the best lir this town has ever experienced ever good luck feeding your bs to the rest be sure my family will never support your non sense you deserve 19 years of prison!

---

[5] Many of the exhibits introduced at the hearing were contained in the Criminal Complaint.

[6] An agent testified, and it is not lost on the undersigned, that "tf" is commonly understood to mean "the fuck." (Doc. No. 36 at 9:23-24).

[7] Defendant's Facebook account is under the name "Cass Busbin" (Doc. No. 36 at 7:18-19). This post was from the Facebook account of Cass Busbin to the official judicial Facebook page of Judge Olita.

[8] For the most part, and except as indicated otherwise, the posts quoted herein are quoted verbatim, without any corrections of their pervasive spelling and grammar errors and without de-coarsening the language.

(Doc. No. 36 at 11:2-11). Exhibit 3, also a post on Judge Olita's official Facebook page, was made in response to an individual, David Gilland, who had previously left a comment of encouragement for Judge Olita on her Facebook page. The responsive post by Cass Busbin stated, "David Gilland, what a pos[9] that woman is a waste of oxygen!" (Doc. No. 36 at 12:5-12). For context, Judge Olita is a Circuit Court Judge in Montgomery County, Tennessee, who presided over the divorce proceedings between Defendant and his ex-wife, and generally ruled in a way that was inconsistent with Defendant's desired outcome. (Doc. No. 36 at 12:19-13:6).

The Government's Exhibit 6 is a post on Defendant's Facebook page from October 7, 2023. The post stated:

> [C]larksville police officer christopher bush is a child abusing child neglecting and woman beater and is a criminal whim [sic] using his job to get away with numerous crimes that the cpd want do nothing about it but I will! also jordan jones is a Montgomery tn employee former sheriff deputy that has abused minors underage of 5 as well as many different women and the sheriff fusson covered it all up i wont. and no this dad is not scared of retaliation because I will not tolerate any abuse of children mine or others!!
>
> Corrupt individuals of the clarksville area that I have evidence of
> -Katy Olita
> -reed polland,
> -joel wallace
> -john fusson
> -jordan jones
> -christopher Bush
> -darlene sample
> -officer mcmillan
> -many more and i'll provide a better list on November 17th:)

(Doc. No. 36 at 14:6-26). Reid Poland ("Judge Poland") is a General Sessions Court Judge in Montgomery County, Tennessee, who sentenced Defendant's twin brother to six days of custody after finding him guilty of violating an order of protection. (Doc. No. 36 at 27:11-15). Defendant

---

[9] The Court will not bother to translate what the "pos" surely means here; suffice it to say that (as many readers likely will know full well) it is an abbreviation for a substantially insulting term.

was present in Judge Poland's courtroom gallery during that hearing and became loud, disruptive, and angry. (Doc. No. 36 at 27:7-15). As a result, Judge Poland found Defendant in contempt and sentenced him to two days of custody; however, the sentence was ultimately stayed after Defendant was taken to the hospital via ambulance due to alleged breathing difficulties and a possible heart attack. (Doc. No. 36 at 27:16-28:4). Most of the other individuals listed in the post are public officials in Montgomery, Tennessee. For example, Joel Wallace is a Circuit Court Judge in Montgomery County (Doc. No. 36 at 15:13-15); John Fuson is the Sheriff of Montgomery County (Doc. No. 36 at 15:16-20); Darlene Sample is a Judicial Commissioner in Montgomery County (Doc. No. 36 at 16:3-8); Christopher Bush is a Clarksville Police Department officer and also the intimate partner of Defendant's ex-wife (Doc. No. 36 at 44:21-23). The exception is Jordan Jones, who is the ex-husband of Defendant's ex-wife.

Exhibit 8 is a Facebook post originally posted on the Facebook page of Defendant's wife, Angel Busbin, and subsequently reposted to Defendant's Facebook page on October 18, 2023. The post pertains to an armed protest planned by Defendant and his wife which was scheduled to take place on November 17, 2023, in front of the courthouse in Clarksville.[10] It depicts a photograph of a poster board and art materials and states,

> "This is the beginning. Judge Kathryn Olita, Patrol officer Christopher Bush, Officer Gustavo Acevedo, Magistrate Darlene Sample, Sheriff Fusson, Attorney at Law Travis Meeks, Claudia Lee (Jones), Jenna Busbin[11], child support office, and child services office, we're coming for you!!"

(Doc. No. 36 at 17:24-18:6). Exhibit 9 is a post made two days later, also on Defendant's Facebook page, and states:

---

[10] The protest never occurred, presumably due to Defendant's arrest on October 27, 2023.

[11] At the time of the hearing, Jenna Busbin and Defendant's twin brother, Cody Busbin, were married but had filed for divorce. The divorce was contested. (Doc. No. 36 at 18:10-24).

"a judge whom took office one year after my case began has the balls to deny my constitutional rights before ever having the privilege of meeting me. Next Friday will be one to remember as I hopefully can attend ms fry court room in clarksville. 😊"

(Doc. No. 36 at 19:2-7). Judge Fry is a Circuit Court Judge in Clarksville, Tennessee. Testimony revealed that Defendant and his twin brother filed a lawsuit in Judge Fry's courtroom, which Judge Fry dismissed. (Doc. No. 36:10-18).

Exhibit 10 contained a post shared on Defendant's Facebook page on October 26, 2023. The post originated from a Facebook account titled "Pissed off Parent" and contained a link to an article, "Judge Shot and Killed Hours After Stripping Father of Custody in Divorce Case." (Doc. No. 36 at 21:3-5). The article link discusses the fatal shooting in his driveway of Washington County, Maryland Circuit Court Judge, Andrew Wilkinson on October 19, 2023, hours after he presided over a divorce hearing, wherein he ruled adversely to the father, Pedro Argote. (Doc. No. 36 at 21:11-20). Petro Argote was later found deceased in the woods not far from where the fatal shooting occurred. (*Id.*).

In addition to these above-referenced exhibits, the Government also presented at the hearing testimony about: the impact that these posts had on the alleged victims; Defendant's arrests on October 18, 2023, and October 27, 2023; Defendant's subsequent mental health evaluation and impatient hospitalization; as well as other general information about Defendant's personal history and characteristics.

      ii.      Defendant's Position

At the hearing, Defendant did not offer any evidence (by proffer or otherwise). But he did argue that his posts were an expression of discontent and unhappiness about circumstances related to his divorce case and behavior of his ex-wife and her boyfriend, rather than direct threats. (Doc.

No. 36 at 58). According to Defendant, there was no evidence showing that Defendant has taken any affirmative actions to act upon the statements in the posts. (*Id*.).

Via the Motion, Defendant argues that when the default rule favoring release is considered, Defendant should be released because the Magistrate Judge's finding of dangerousness is purely speculative. (Doc. No. 27 at 3). Further, Defendant submits that there are conditions of release—in particular, electronic monitoring, nightly check-ins with the base duty officer, and restriction of Defendant's online activities—that could reasonably assure the safety of other persons and the community (Doc. No. 27 at 5).

Via a Declaration of his counsel filed in connection with his Motion, Defendant proffered new information related to a slightly revised release plan. The slight revision to Defendant's release plan includes proposed confinement to a specific unit at Fort Campbell, namely the Soldier Recovery Unit ("SRU")—a unit for soldiers that are not "fit for duty." The Declaration sets forth the following pertinent information with respect the SRU:

1) Defendant can stay overnight in SRU barracks;

2) Soldiers in the SRU have access to meals, medical, and dental needs;

3) The SRU assigns solders to participate in career and education readiness program; and

4) The SRU can monitor and restrict Defendant's activities as may be ordered.

(Doc. No. 28 at 2). Counsel offered Defendant's assignment to the SRU for the Court to consider as a less restrictive, and purportedly appropriate, alternative to detention.

LEGAL STANDARD

After a person is ordered detained by a magistrate judge, the person "may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). "Review of the Magistrate Judge's decision is de novo, 'although the

district court "may conduct its review and base its decision on the evidence presented to the magistrate [judge] at the detention hearing."'" *United States v. Zapien*, No. 3:14-CR-00037-1, 2014 WL 1028435, at *2 (M.D. Tenn. Mar. 17, 2014) (quoting *United States v. Stokes*, 2006 WL 3843589, at *1 (M.D. Tenn. Dec.22, 2006) (citation omitted)).

Under the Bail Reform Act of 1984, 18 U.S.C. §§ 3141 et seq., the Government may move for pretrial detention of a defendant only in cases that fall into one of seven categories. 18 U.S.C. § 3142(f)(1)(A)-(E), (2)(A)-(B). Four categories focus on the nature of the offense charged, including whether the charged offense is a crime of violence. 18 U.S.C. § 3142(f)(1)(A), (B), (C), (E). One category focuses on Defendant's prior convictions. 18 U.S.C. § 3142(f)(1)(D). The other two categories involve cases that involve a serious risk of flight or cases involving obstruction of justice, witness tampering, or jury tampering. 18 U.S.C. § 3142(f)(2)(A)-(B). The Government has the burden to show by a preponderance of the evidence that a case falls into one of these categories. Once a case is found eligible for a detention hearing, the court must assess the appropriateness of release or detention by considering certain factors set forth in 18 U.S.C. § 3142(g).

"The default position of the law . . . is that a defendant should be released pending trial." *United States v. Stone*, 608 F. 3d 939, 945 (6th Cir. 2010); see also *United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.").[12] Thus, a defendant may be detained pending trial only if the Court finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The facts used by the Court to find that no combination of conditions will

---

[12] Although release is the default position of the law under section 3142, the default is modified by a rebuttable presumption set forth in the statute. Here however, neither party has asserted that a rebuttable presumption applies.

reasonably assure the community's safety must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). In other words, the Government must prove dangerousness to any other person or the community by clear and convincing evidence. *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004). By contrast, the Government must prove risk of flight only by a preponderance of the evidence. *Id.*

In determining whether there are conditions of release that will reasonably assure the defendant's appearance and the safety of any other person and the community, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person;[13] (3) the history and characteristics of the person; (4) whether the defendant was on probation, parole, or other release at the time of the current offense; and (5) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

## ANALYSIS

With the foregoing in mind, the Court has conducted a *de novo* review of the record which includes the charges against Defendant; the Government's Motion for Detention Hearing and For Detention of the Defendant (Doc. No. 3, "Motion for Detention"); the Pretrial Services Bail Report ("Bond Report"); consideration of the testimony, proffers, and arguments introduced at the hearing before the Magistrate Judge; the Order of Detention; the Motion, Memorandum, and Declaration; the Government's Response; and Defendant's Reply. Based upon that review, the Court concludes that Defendant's detention pending trial is warranted because Defendant presents a danger to the

---

[13] "This factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt [on the pending charges]." *Stone*, 608 F.3d at 948. Notably, however, the weight of the evidence of dangerous can, in some cases, be enhanced by substantial weight of the evidence of guilt; this is because when the charges against a defendant themselves reflect dangerous conduct, evidence of guilt on those charges in some cases tends to reflect an ongoing danger to other persons or the community.

community, and no conditions of release will ensure the defendant's presence or assure the safety of the community.

## A. Eligibility for Detention Under 18 U.S.C. § 3142(f)(1)(A) and (2)(B)

### i. Crime of Violence (18 U.S.C. § 3142(f)(1)(A))

As a threshold matter, the Court notes that the Government moved for a detention hearing on the grounds that the case involves a "crime of violence" (as defined by 18 U.S.C. § 3156(a)(4))[14] and involves "a serious risk that [Defendant] will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate or attempt to threaten, injure or intimidate a prospective witness or juror." *See* 18 U.S.C. §§ 3142(f)(1)(A) and (f)(2)(B). At no point has Defendant challenged the Government's authority to move for detention in this case or disputed the Government's position that cyberstalking is a crime of violence under both the elements clause and residual clause of 18 U.S.C. § 3156(a)(4). Nor has Defendant challenged the Government's assertion that this case involves a serious risk that Defendant "will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate or attempt to threaten, injure or intimidate a prospective witness or juror." Because (as discussed below) it is clear to the Court (not to mention undisputed) that a detention hearing was authorized in this case under 18 U.S.C. § 3142(f)(2)(B) (Serious Risk of Threatening, Injuring, or Intimidating a Prospective Witness), the Court need not address whether the offense of cyberstalking is a crime of violence under the Bail Reform Act's definition of crime of violence at

---

[14] A crime of violence under the Bail Reform Act means: "an offense that has an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another" ("elements clause") or "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense" ("residual clause"). 18 U.S.C. § 3156(a)(4)(A), (B). In its Motion for Detention, the Government avers that cyberstalking is a crime of violence under the elements clause and the residual clause of 18 U.S.C. § 3156(a)(4).

18 U.S.C. § 3456(a)(4), so as to properly ground a detention hearing on 18 U.S.C. §§ 3142(f)(1)(A).[15]

    ii. Serious Risk of Threatening, Injuring, or Intimidating a Prospective Witness (18 U.S.C. § 3142(f)(2)(B))

Detention is available in any case where there is "a serious risk that [the defendant] will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." 18 U.S.C. § 3142(f)(2)(B). There is strong evidence[16] that over the course of five to six months in 2023, Defendant weaponized the Internet to launch a campaign of social media posts aimed primarily at four individuals: Judge Olita, Judge Poland, Travis Meeks, and Christopher Bush. The content of the posts speaks for itself, and there is every reason to conclude that Defendant aimed his ire at injuring the professional reputation of, causing fear in, and/or intimidating these individuals. Also critical to the undersigned's analysis is strong evidence that (and how) Defendant's actions left a profound mark on these individuals' lives due the fear and emotional distress they experienced. For example, the Court heard testimony that Judge Olita "had a[n] emotional breakdown and feared for her life." (Doc. No. 36 at 24:15-18). Additionally, she enrolled in self-defense classes, started seeing a therapist, and installed security cameras at her home. (Doc. No. 36 at 25:3-6). Further, she had concerns that if she continued to do her job, she would be murdered. (Doc. No. 36 at 26:7-9). Travis Meeks perceived

---

[15] Although the Magistrate Judge found that Defendant was charged with an offense "for which detention can be pursued by the [G]overnment," he failed to indicate whether he found Defendant eligible pursuant to 18 U.S.C. § 3142(f)(1)(A) or (2)(B) or both. (Doc. No. 36 at 68:4-11).

[16] On review of a detention or release order, where (unlike right here) the Court refers *without qualification* (e.g., without prefacing factual statements with something like "the evidence shows that") to Defendant or others taking certain actions or to certain circumstances having existed, the reference is intended to be taken qualifiedly—i.e., with the understanding that this is what *credible evidence currently shows*, and not necessarily what the Court has determined conclusively or what a jury should find is shown by the evidence ultimately presented at trial.

the post containing a bucket of AR-15 rifle ammunition as an attempt to intimidate him. (Doc. No. 36 at 31:2-4). He believed that the post contained in Exhibit 1 was a direct threat on his life. (Doc. No. 36 at 31:5-9). Judge Poland likewise believed that posts were made to intimidate him, and both he and his wife started carrying firearms out of concern for their safety. (Doc. No. 36 at 26:18-23). Christopher Bush stated that his career and his life has been greatly impacted by the false public allegations about him contained in posts. (Doc. No. 36 at 48:4-12). Each of these four victims is a prospective witness in this case. And as further explained below, the Court agrees with the Magistrate Judge that there is a serious risk Defendant would continue to engage in (or at least attempt to engage in) the same behavior if released.

There are two things that are particularly concerning about the sequence of events detailed at the hearing that reflect the risk that Defendant would continue to engage in the same behavior (or attempt to do so) if released. The first is that despite Defendant's arrest for harassment on October 18, 2023 (hereinafter, "first arrest"), the pattern of conduct undertaken by the Defendant (and those closest to him) continued thereafter.[17] For example, Defendant alleged he was sexually assaulted by the courtroom deputy inside the Montgomery County courthouse immediately after his first arrest. (Doc. No. 36 at 34:1-7). The matter was investigated, and video from the encounter between Defendant and the courtroom deputy revealed Defendant's allegations were false and unfounded. (Doc. No. 36 at 34:7-13). Law enforcement authorities subsequently obtained an arrest warrant for Defendant due to his making a false police report, and Defendant was again arrested on October 27, 2023 (hereinafter, "second arrest"). Immediately after his second arrest, Defendant was assessed by a mental health professional, who found that Defendant was an imminent risk of harm or death to himself or others. (Doc. No. 36 at 35:1-4). Consequently, Defendant was

---

[17] The Pretrial Services Report reflects that the harassment charge is related to the instant offense.

involuntarily committed to the Blanchfield Army Community Hospital at Fort Campbell, pending a mental health evaluation. Defendant was released on the afternoon of November 1, 2023. (Doc. No. 1 at 29 ¶ 52).

Yet during this short nine-day timeframe between the first arrest to the second arrest, Defendant made four additional Facebook posts that refer to taking action against judges and other public officials who did not act in accordance with his wishes. And one such post directly alluded to the recent murder of a judge. (*See generally* Exhibits 8-11). All of this is to say that Defendant's first arrest seemed only to fuel Defendant's rage, rather than causing Defendant to hit pause and consider his conduct. And now that Defendant is fully aware that the same individuals he targeted are instrumental to the success of the Government's prosecution and perhaps his own liberty, there is a very real risk that Defendant would continue to intimidate them.

The Court also finds it particularly concerning that the Defendant's wife supported Defendant's conduct and continued Defendant's agenda in his absence. For example, Defendant's wife had plans to actively participate in the scheduled armed protest, and she made similar posts on Facebook informing that she planned to take action against Judge Olita, Travis Meeks, Christopher Bush, and others. (*See* Exhibit 8). Her posts continued even after Defendant's arrests and subsequent involuntary mental health commitment. (*Id*.; Doc. No. 1 at 16 ¶ 12, 13; Doc. No. 36 at 18:1-6). This is particularly notable, because even if the Court had reason to believe that Defendant would abide by court-imposed conditions if released (which it does not), any restrictions that could be placed on Defendant's behavior (by way of a release condition(s)) would not necessarily stop Defendant from influencing his wife or other family members to act on his behalf. For these reasons, the Government was entitled to seek detention under 18 U.S.C. § 3142(f)(2)(B), because there is "a serious risk that Defendant will obstruct or attempt to obstruct

justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror."

B. Factors Under 18 U.S.C. § 3142(g)

i. Nature and Circumstances of Offenses Charged

The first factor the Court must consider is the nature and circumstances of the offenses charged. Here, Defendant is accused of engaging in a cyberstalking campaign aimed at harassing and intimidating judges, law enforcement officers, and other public officials who did not comply with his wishes. Defendant threatened an attorney who represented Defendant's ex-wife in divorce proceedings. (Exhibit 1). He then baselessly accused two judges of fraud, bribery, child abuse, sexual misconduct, and child endangerment offenses. (Exhibits 2-3; Doc. No. 36 at 28:17-25). Defendant continued on his destructive mission by planning an armed protest at the courthouse to protest judges and lawyers. He made posts about the armed protest and included a link about a recent murder of a judge in Maryland in one of the posts. As previously noted, Defendant's arrest for harassment did not stop him, but rather fueled his fire, and his use of social media as a means of attack continued.

Irrespective of how Defendant subjectively may view his own actions,[18] his conduct objectively reflects a clear lack of respect for judges and law enforcement. Defendant's personal vendetta caused fear and harm to several public officials who were simply doing their jobs. As noted by the Government its Response, "the case agent…described the resulting chaos and fear that [Defendant] caused in the lives of his victims, which include[d] the need to improve security at their homes, carry firearms for protection, constantly look over their shoulder, live with the ever-present fear of encountering [Defendant] carrying firearms at their workplace, and undergoing

---

[18] During the hearing, Defendant argued that he did not take any affirmative action to do anything to the judges and that his posts were "random." (Doc. No. 36 at 56:5-22).

workplace investigations based on false [public] allegations of corruption, sexual abuse, or other crimes." (Doc. No. 31 at 1). Expressing disagreement with judicial opinions and the actions and perceived motives of judges and other public officials certainly is generally permissible. But launching a campaign of unfounded allegations tied to strong implications of threats to the personal safety of judges and other public officials is impermissible and generally very concerning. The Court will not minimize the seriousness of circumstances of this offense and finds that this factor weighs heavily in favor of detention.

      ii. Weight of Evidence

As noted in a footnote above, "[t]his factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt [on the pending charges]." *Stone*, 608 F.3d at 948. Here, the Court notes that the weight of the evidence (of dangerousness, which happens in this case to overlap substantially with evidence of guilt on the pending charge) in this case is particularly strong because the alleged conduct is largely preserved by social media posts and clearly demonstrates that Defendant has engaged in a pattern of behavior that harassed and harmed numerous government officials, including law enforcement officers and judges. (*See* Exhibits 1-11). And although Defendant argues that his posts should be collectively viewed "as nothing but hot air" (Doc. No. 36 at 56:5-6), the current record reflects that Defendant's posts caused others emotional distress and/or a real fear of death or serious bodily injury—something mere hot air would not do. And as determined above, the Defendant's course of conduct poses a significant risk that Defendant will threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate Judge Olita, Judge Poland, Travis Meeks, and Christopher Bush, as well as other prospective witnesses in this case. Therefore, the weight of Defendant's dangerousness, specifically with respect to these individuals, is heavy.

### iii. History and Characteristics

In determining whether there are conditions of release that will reasonably assure the safety of any other person and the community, the Court must take into account Defendant's history and characteristics, "including (A) the [defendant's] character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, record concerning appearance at court proceedings, and (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law." 18 U.S.C. § 3142(g)(3)(A), (B). Testimony at the hearing outlined Defendant's history of domestic violence towards his romantic partners. (Doc. No. 36 at 30:5-20). For example, Defendant's ex-wife informed law enforcement that Defendant has a history of strangling, hitting, injuring, and threatening to kill her. (*Id.*) Another (prior) intimate partner of Defendant, who testified under oath in Defendant's divorce proceedings, described Defendant (to law enforcement) as an alcoholic. (Doc. No. 36 at 32:21-25). She also informed law enforcement that Defendant murdered the family dog in front of her and her two-year child. (Doc. No. 36 at 33:1-9). Although it appears that Defendant was not on probation, parole, or supervised release at the time he committed the offense, Defendant continued to weaponize the Internet by making posts targeting judges and public officials after his first arrest for conduct related to the instant offense. The Court also has reason to believe that Defendant suffers from severe mental health issues, as he was involuntary committed after first arrest and found to be an imminent risk of harm/death to himself or others. There are also active military protection orders prohibiting Defendant and his brother from being within 500 feet of Judge Olita, Judge Fry, and Judge Poland. (Doc. No. 36 at 35:14-20). This factor also cuts in favor of detention.

iv. Nature and Seriousness of the Danger to Any Person or the Community

There is very substantial evidence that Defendant poses a danger to others. The Court (as well as the military, as evidenced by the orders of protection) is gravely concerned about the physical safety of Judge Olita, Judge Fry, Judge Poland, and Travis Meeks.[19] This leads to the ultimate question of whether the Court can find by clear and convincing evidence that no condition(s) of release can adequately mitigate dangerousness. As previously noted by the Court, Defendant has failed to explain how his revised release plan is material to the issue of potential danger to the community, in that the revised plan fails to offer a specific third-party custodian or other solutions to mitigate risks which he concedes were raised by Magistrate Judge Frensley—such as Defendant's close proximity to alleged victims—or to effectively deter or prevent Defendant from engaging in the same conduct. (*See* Doc. No. 35). The Court is unable to find that either Fort Campbell as a whole or a particular unit at Fort Campbell (such as the SRU) qualifies as a suitable or willing third-party custodian. Even if the Court were aware of a condition of release that could effectively deter or prevent Defendant from continuing to engage in the same sort of conduct that led to the charges in this case, Defendant's overwhelming lack of respect of judges and law enforcement is such that he could not be relied upon to comply with any conditions of release that theoretically, if followed, could ensure the safety of the community.

## **CONCLUSION**

For these above-stated reasons, the Court finds that the Government has met the applicable burden (by clear and convincing evidence) to detain Defendant based on dangerousness and the inability of condition(s) of release to adequately mitigate dangerousness. Defendant's Motion (Doc No. 26) is **DENIED,** and Defendant shall remain detained pending trial.

---

[19] The impact of Defendant's actions on Judge Olita, Judge Fry, Judge Poland, and Travis Meeks, is, at this point, entirely undisputed by Defendant.

As indicated elsewhere above, this order is based on the record currently before the Court Nothing herein is meant to suggest what the ultimate fact-finding or verdict in this case should be, and nothing herein is meant to impair in any way the important principle that Defendant still is presumed innocent of the charge pending against him.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE